**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald Lynn SHETTERLY,
Defendant-Appellant.**

No. 91–2313.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1992.

Decided Aug. 10, 1992.

Mark D. Stuaan, Asst. U.S. Atty., Office of U.S. Atty., Indianapolis, Ind. (argued), for plaintiff-appellee.

Bradley L. Williams, U.S. Atty. (argued), Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant-appellant.

Before FLAUM and KANNE, Circuit Judges, and SHABAZ, District Judge.*

KANNE, Circuit Judge.

After a jury trial, Donald Shetterly was convicted of attempting to export a controlled microwave amplifier to (then) West Germany without an export license in violation of § 2410(a) of the Export Administration Act of 1979, 50 U.S.C.App. § 2401, *et*

---

* The Honorable John C. Shabaz, District Judge for the Western District of Wisconsin, is sitting by designation.

*seq.*, and was sentenced to 41 months imprisonment. He now appeals his conviction and sentence and we affirm.

In 1987, Mr. Shetterly owned and operated Stoney Creek Limited, Inc., d/b/a Anderson Honda, a motorcycle sales and service dealership in Anderson, Indiana. Mr. Shetterly was introduced to Karl Mann, a West German businessman, by a business partner. From 1987 through 1989, Mr. Shetterly sent electronic equipment, including microwave amplifiers and computer software, to Mr. Mann in West Germany. Mr. Mann had told Mr. Shetterly that he could obtain the equipment less expensively in the United States than in West Germany.

In October 1988, Mr. Mann sent a letter to Mr. Shetterly requesting him to purchase an amplifier from Berkshire Technologies, Inc., of Oakland, California, "model no. BTL–1.6–30 H1," with a 20 degrees Kelvin operating temperature. On October 17, 1988, Mr. Shetterly called Berkshire to inquire about the amplifier and spoke with William Lum, the president of Berkshire. Mr. Shetterly asked about either the model L–1.6–30 HI or the model L–1.6–30 H1.[1]

On November 10, 1988, Mr. Shetterly faxed an order to Berkshire for "one amplifier model number L–1.6–30 HI at a cost of $6,500.00." The amplifier was on the Department of Commerce's commodity control list and therefore a validated license was required for its exportation out of the United States.[2] Berkshire, which had previously sold only one HI amplifier, contacted the Department of Commerce and agreed to cooperate in an investigation of Mr. Shetterly.

As part of the investigation, Maureen Barnato, a Berkshire employee, called Mr. Shetterly on November 14, 1988, concerning the order. Ms. Barnato informed Mr. Shetterly that the HI amplifier was a controlled item and therefore an export license was required for its shipment out of the country. Mr. Shetterly told Ms. Barnato that the amplifier would not be exported.

On March 6, 1989, William Hendrickson, an agent of the Office of Export Administration, sent a letter to Mr. Lum which set forth the Department's agreement with Berkshire. The letter stated that Berkshire would send an amplifier to Mr. Shetterly that would function if bench tested but would not work properly if placed within the cryogenic environment of a radio telescope system. In building the amplifier, Mr. Lum used parts with low reliability so that the amplifier would work for a short time. Before shipping the amplifier to Mr. Lum, Mr. Lum tested it and found that it operated above specifications. He included the test results with the amplifier, and noted the serial number of the amplifier, 213, on the packing list.

1. Model H1 was an older amplifier, designed to operate at a temperature of 20 degrees Kelvin, and was considered to be obsolete by October 1988. Model HI included a separate isolator (an electronic device which ensures that the input signal travels "one-way" through the amplifier) and operated at colder temperatures. The microwave frequency range of the HI amplifier corresponds to the frequency at which certain low-level signals are emitted by some stellar bodies. The primary use of the amplifier is in radio astronomy for "geodesy and mapping out the sky." At one time, the frequency range corresponded to the downlink frequency for signals once transmitted by a Soviet satellite.

2. Export licenses are required for exporting certain commodities under the Export Administration Act. *See* 50 U.S.C.App. § 2403. A general license merely requires that the commodity meet certain standards—no license application is necessary and no license document is issued.

15 C.F.R. § 771. A validated license requires the exporter to file a license application before exporting commodities which cannot be exported under a general license or with other authorization by the Office of Export Licensing. 15 C.F.R. § 772. Such commodities are included in the Department of Commerce's commodity control list. *See* 15 C.F.R. § 799.1 Supp. 1. At the time of the offense, a validated license was required for exportation of the Berkshire amplifier because its value exceeded $5,000.00. *See* 15 C.F.R. § 799.1 Supp. 1, ECCN 1537A (control list entry governing microwave amplifiers). However, the Berkshire amplifier was exempted from the control list, effective July 1, 1990; therefore, a validated license is no longer needed for its exportation. The district court granted the government's pre-trial motion in limine prohibiting Shetterly from making any reference to this change as it occurred after the date of the offense.

Mr. Shetterly received the amplifier, isolator and a power supply on March 17, 1989. The packing list described the amplifier as a "Microwave amplifier, model L‑1.6–30 HI, serial no. 213, including isolator." The amplifier was stamped "model L–1.6–30," and had a serial number of 213. Mr. Shetterly had written to Mr. Mann on February 8, 1989, to inform him that the amplifier ("type BTL 1.6 H–1") would be shipped the following week. Mr. Shetterly's sale price of the amplifier to Mr. Mann was $7,150.00.

## I.

■ Mr. Shetterly argues that the evidence is insufficient to support his conviction. In challenging the sufficiency of the evidence, Mr. Shetterly bears a heavy burden. *United States v. Davis*, 890 F.2d 1373, 1377 (7th Cir.1989), *cert. denied*, 493 U.S. 1092, 110 S.Ct. 1165, 107 L.Ed.2d 1068 (1990). We will uphold the conviction if the evidence, when viewed in the light most favorable to the government, establishes that any rational trier of fact could have found the defendant guilty of the crime charged beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Harty*, 930 F.2d 1257, 1265 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 262, 116 L.Ed.2d 215 (1991). We will not weigh the evidence or assess the credibility of witnesses. *Id.* at 1266.

■ Mr. Shetterly asserts that the government failed to establish that the amplifier shipped to him had a net value in excess of $5,000.00 and therefore required a validated license for its exportation. "Net value" is defined as the larger of the actual selling price of the commodity or its current market price, to the same type of purchaser in the United States. 15 C.F.R. § 771.5. In fact, he submits that the testimony of his expert witnesses established that the amplifier had a net value below $5,000.00. Robert Wedoff testified for the defense about the physical and electronic characteristics of an amplifier having the same specifications as the Berkshire amplifier. Although the district court sustained the government's objection to Mr. Wedoff's testimony regarding the price of a comparable amplifier produced by another manufacturer, he testified that an amplifier would have very little value if it did not work properly. William Root testified for the defense about the value of the isolator (a non-controlled item), and stated that in the absence of an invoice demonstrating the actual price of the isolator, market value could be used to calculate net value. After comparing similar products, Mr. Root valued the isolator shipped to Mr. Shetterly at $1,800.00. Therefore, Mr. Shetterly contends that the value of the amplifier was less than $5,000.00 (modified amplifier less $1,800.00).

However, this evidence merely conflicts with evidence presented by the government. Mr. Shetterly intended to purchase the amplifier at a price of $6,500.00. Any modification of the amplifier would only have affected its market price and is not relevant because the actual selling price was greater than $5,000.00. *See* 15 C.F.R. § 771.5. Mr. Lum valued the isolator sent to Mr. Shetterly at $500. All questions of credibility and the weight to be afforded conflicting evidence are for the jury to resolve and their conclusions on such matters are accorded substantial deference. *United States v. Jones*, 808 F.2d 561, 569 (7th Cir.1986), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987). There was sufficient evidence submitted to show that the net value of the amplifier was greater than $5,000.00. The conflicting testimony concerning the value of the isolator was for the jury to consider; the jury apparently found Mr. Lum's testimony more credible.

■ Mr. Shetterly contends that even if the net value of the amplifier exceeded $5,000.00, the government failed to prove that he was aware of its value. *See* 50 U.S.C.App. § 2410(a). Although Mr. Shetterly asserts that at most he knew that the amplifier and isolator together cost $6,500.00, he ordered *"one amplifier* model number L–1.6–30 HI *at a cost of $6,500.00"* (emphasis added) from Berkshire. In addition, Ms. Barnato had

warned Mr. Shetterly that the amplifier was a controlled item and that a license was needed for its exportation out of the country.

■ Finally, Mr. Shetterly argues that the government failed to prove that the amplifier shipped to him was the model L–1.6–30 HI. Although the amplifier itself was marked only "L–1.6–30," the packing list indicated that the model was HI and the serial number on the list, 213, was the same as the number on the amplifier. It is irrelevant that Mr. Shetterly intended to order the model H1, as per Mr. Mann's request, rather than the model HI. The amplifier shipped by Berkshire was the model HI which Mr. Shetterly in fact ordered. The evidence is sufficient to support Mr. Shetterly's conviction.

## II.

■ Mr. Shetterly contends that the district court erred in admitting certain evidence and in excluding his evidence of net value. In reviewing the district court's evidentiary rulings, we are limited to determining whether the district court abused its discretion. *United States v. Lennartz*, 948 F.2d 363, 366 (7th Cir.1991); *United States v. Whalen*, 940 F.2d 1027, 1032 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 403, 116 L.Ed.2d 352 (1991). Such an abuse occurs only where no reasonable person could take the view adopted by the district court. *United States v. Manos*, 848 F.2d 1427, 1429 (7th Cir.1988).

Mr. Shetterly acknowledges that his trial counsel failed to object to the evidence which he contends was improperly admitted. However, he asserts that appellate review of the alleged errors is available because the cumulative effect of the erroneous admission of evidence "was of such great impact that it probably changed the outcome" of the trial, *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir.1988), and therefore constituted plain error. FED.R.CRIM.PRO. 52(b).

### A.

■ This case arose prior to the break up of the former Soviet Union. In line with cold war attitudes, Mr. Lum testified that he was suspicious that the destination of the amplifier was overseas because he "had become aware ... of significant attempts by the Soviets to obtain the amplifier." Mr. Shetterly argues that the statement was improper because it implied that his goal was to supply technology to the Soviet Union. However, there was evidence that the technology involved was already known to the Soviets; therefore, any error was harmless. FED.R.CRIM.PRO. 52(a).

### B.

■ An agent for the Department of Commerce testified that he had checked the government's records of export license applications and had found no record for an application by either Mr. Shetterly or Mr. Mann. On cross-examination, the agent testified that Mr. Mann's name was not on the Department's "black list" of end users for whom export licenses should not be granted and that the West German government had given him information about Mr. Mann's business. On re-direct, the agent was asked about the information he had received from the West German government. Mr. Shetterly takes issue with the agent's response that he was told Mr. Mann was in the business of reselling electronic equipment to various places, including the People's Republic of China and Hong Kong. The agent's testimony responded to an issue raised during cross-examination; there was no plain error.

### C.

The government introduced a letter from the Director of the Office of Technology and Policy Analysis for the Bureau of Export Administration, which stated that the Berkshire amplifier was a controlled item at the time of the offense. Mr. Shetterly contends that the letter is hearsay, testimonial, and was produced for purposes of litigation. Any error was harmless considering that other evidence was admitted which indicated that the amplifier was a controlled item at the time when Mr. Shet-

terly attempted to export it to West Germany without a license.

### D.

Prior to trial, the government filed notice of its intent to introduce evidence of other crimes, wrongs or acts pursuant to Federal Rule of Evidence 404(b). *See Lennartz*, 948 F.2d at 366 (setting forth the four-part test for admitting evidence under Rule 404(b)). The evidence that the government sought to introduce included Mr. Shetterly's export of computer software to Mr. Mann on October 6, 1988, his export of other amplifiers to Mr. Mann on October 26, 1988, and his undervaluation of the Berkshire amplifier and another amplifier on postal forms.[3] The district court determined that only the postal forms were admissible under Rule 404(b).

Rule 404(b) generally excludes evidence of a defendant's prior bad acts to prove that because the person committed the prior bad act, he likely committed the act at issue. *United States v. Sophie*, 900 F.2d 1064, 1074 (7th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 124, 112 L.Ed.2d 92 (1990). However, as the government asserts, the acts were not introduced as 404(b) bad acts. Mr. Shetterly acknowledges that there was no evidence that export of any of the items was unlawful. Although he asserts that the evidence was prejudicial because it suggested to the jury that "anyone who mailed goods overseas more than once must be doing something wrong," he also states that "the uncharged transactions were probative only of the irrelevancy that [he] had exported before, not that he had violated export regulations." Therefore, Mr. Shetterly concedes that the acts were not admitted as 404(b) bad acts. The acts were relevant to show merely that Mr. Shetterly

had exported other items to Mr. Mann. The district court did not abuse its discretion in admitting the evidence; therefore, we need not address the government's other arguments of admissibility.

### E.

■ Mr. Shetterly contends that the district court erred in excluding evidence of the value of comparable amplifiers as irrelevant. He argues that such evidence was made relevant by the concept of net value. We disagree. As we noted, the relevant definition of "net value" is the larger of the actual selling price of the commodity or its current market value, to the same type of purchaser in the United States. 15 C.F.R. § 771.5. Because the actual selling price of the Berkshire amplifier was at least $6,500.00[4] (which is obviously in excess of the $5,000.00 limit), evidence of its market value (or the value of comparable amplifiers) was unnecessary unless the market value was greater than that amount. Rationally Mr. Shetterly would not have introduced such evidence. The district court did not abuse its discretion in denying the evidence as irrelevant.

### III.

Mr. Shetterly alleges that the district court erred in instructing the jury. Although Mr. Shetterly acknowledges that his trial counsel did not object to the instructions, he contends that he may raise the issue on appeal because the giving of the instructions he challenges constituted plain error. *United States v. Sloan*, 939 F.2d 499, 502 (7th Cir.1991), *cert. denied*, — U.S. ——, 112 S.Ct. 940, 117 L.Ed.2d 110 (1992). As we noted, plain error is error of such "great magnitude

---

**3.** Shetterly was originally charged in a five-count indictment. The government voluntarily dismissed several counts of that indictment. Shetterly was subsequently charged in a four-count superseding indictment, and two counts were dismissed. Shetterly was acquitted of one of the remaining counts, and convicted of attempting to export the Berkshire amplifier without a license. The acts that the government sought to introduce under Rule 404(b) were the

subject of the original indictment and the dismissed counts in the superseding indictment.

**4.** It is unclear whether the "actual selling price" refers to the price at which Berkshire sold the amplifier to Shetterly, $6,500.00 (or $6,000.00, the value of the amplifier less the $500.00 value of the isolator), or the price which Shetterly charged to Mr. Mann, $7,150.00. Either way, both amounts are greater than the $5,000.00 limit.

that it probably changed the outcome of the trial." *Kerley*, 838 F.2d at 937. "[I]t is rare for an improper instruction to 'justify reversal of a criminal conviction when no objection has been made in the trial court.'" *Sloan*, 939 F.2d at 502 (citation omitted). "To determine whether a jury instruction was plain error, we must examine the entire trial record to see if the instruction had a probable impact on the jury's finding." *Id.*

■ Mr. Shetterly contends that Instruction No. 8 failed to properly set forth the essential element of knowledge in the charged offense. *See United States v. Jamil*, 707 F.2d 638, 642 (2d Cir.1983) (knowledge is an essential element of proving a violation of the Export Administration Act, 50 U.S.C.App. § 2410(a)). In general, failure to instruct the jury on an essential element of the offense constitutes plain error. *Kerley*, 838 F.2d at 939.

Instruction No. 8 reads in relevant part as follows:

> To sustain the charge of unlawful exportation of a controlled commodity, as charged in Count 1 of the indictment, the government must prove the following propositions:
>
> First: That [Mr. Shetterly] exported, or attempted to export, the [Berkshire amplifier];
>
> Second: That [Mr. Shetterly] did so without first having obtained a validated export license from the United States Department of Commerce;
>
> Third: That the exportation of the [Berkshire amplifier] required a validated export license; and
>
> Fourth: That [Mr. Shetterly] did so knowingly.

Mr. Shetterly contends that the instruction failed to indicate whether "knowingly" modifies only the first element, that he exported or attempted to export the amplifier, and therefore removed the issue whether he knew that an export license was needed from the jury. *See Kerley*, 838 F.2d at 938 (harmless error rule does not apply where error withdraws the issue of guilt from the jury).

■ 50 U.S.C.App. § 2410(a) states that one who "knowingly violates or conspires to or attempts to violate any provision of [the Export Administration Act], or any regulation, order or license issued thereunder" commits a crime. Mr. Shetterly contends that an exportation or attempted exportation of a controlled commodity without a license becomes a crime under § 2410(a) only when the exporter knows that a license is required. We agree with the government's assertions that Mr. Shetterly's reading of the statute would require the government to prove a "willful" violation, which is prohibited by § 2410(b) and carries a stiffer penalty, and that specific intent is not required for a violation of § 2410(a).

In order to establish that Mr. Shetterly violated § 2410(a), the government was required to prove beyond a reasonable doubt that Mr. Shetterly knowingly exported or attempted to export a controlled commodity, without obtaining the appropriate export license, in violation of 15 C.F.R. § 799.1 Supp. 1 (the commodities control list). *United States v. Geissler*, 731 F.Supp. 93, 99–100 (E.D.N.Y.1990); *United States v. Moller–Butcher*, 560 F.Supp. 550, 553 (D.C.Mass.1983); *but see United States v. Gregg*, 829 F.2d 1430, 1437 (8th Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988). Instruction No. 8 properly set forth the government's burden. Any ambiguity in the instruction was to Shetterly's benefit as he would have been held to a higher standard than was required by § 2410(a), the statute under which he was charged. There was no plain error.

Mr. Shetterly contends that Instruction No. 15 was an incomplete description of "net value." He acknowledges that the instruction was a verbatim recital of the regulation defining "net value," 15 C.F.R. § 771.5, but contends that it was insufficient. He asserts that the jury should have been instructed to subtract the value of the isolator in calculating the net value of the amplifier, and informed about shipping charges, nonreusable containers, and how certain terms in the regulation are determined. We disagree. The evidence indicated that the isolator was a separate and

uncontrolled item. Therefore, the jury could have inferred that the value of the isolator should not be included in a determination of the value of the amplifier. Moreover, the other matters were not material issues at trial. Instruction No. 15 was properly given to the jury; there was no plain error. The district court did not err in instructing the jury.

### IV.

Mr. Shetterly maintains that he was denied effective assistance of trial counsel. "To establish a claim of ineffective assistance of counsel, the defendant must satisfy the two-pronged test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." *United States v. Adamo*, 882 F.2d 1218, 1226 (7th Cir.1989).

> Under *Strickland*, initially the appellant must demonstrate that trial counsel's performance fell below an objective standard of reasonableness, recognizing that 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.' Second, the appellant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors ... the factfinder would have had a reasonable doubt respecting guilt.' *Id.* [466 U.S.] at 695–96, 104 S.Ct. at 2068–69. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694, 104 S.Ct. at 2068.

*Adamo*, 882 F.2d at 1226. Mr. Shetterly recognizes that a defendant raising a claim of ineffective assistance bears a heavy burden in establishing the claim. *United States v. Guerrero*, 938 F.2d 725, 727 (7th Cir.1991). Substandard representation may be harmless where the evidence against the defendant is overwhelming. *See United States v. Berkowitz*, 927 F.2d 1376, 1382 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991); *Strickland,* 466 U.S. at 695–96, 104 S.Ct. at 2069. We make our determination on this issue based on the trial record. *See Johnson v. United States*, 805 F.2d 1284, 1290 (7th Cir.1986).

### A.

Mr. Shetterly alleges several inadequacies in counsel's pretrial investigation of his case. Effective representation of a criminal defendant requires pretrial preparation and investigation. *United States v. Jackson*, 935 F.2d 832, 845 (7th Cir.1991); *United States v. Weaver*, 882 F.2d 1128, 1138 (7th Cir.), *cert. denied,* 493 U.S. 968, 110 S.Ct. 415, 107 L.Ed.2d 380 (1989).

> In most cases that preparation will include consultations between attorney and client, interviews with important witnesses for the defense and prosecution, and investigation of potentially fruitful defenses. If defense counsel is unable to personally complete these tasks, then counsel must seek the aid of others, including experts and investigators, to assist in the preparation and investigation. Of course, these duties are subject to reasonable judgment of defense counsel in light of the facts of any particular case. It may be that defense counsel believes a particular avenue of investigation will be pointless. In that circumstance, 'a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment.'

*Id.* (citations omitted). The amount of preparation is a matter of professional judgment, which is entitled to deference. *Berkowitz*, 927 F.2d at 1382.

Mr. Shetterly asserts that his counsel failed to have Mr. Wedoff independently examine and test the amplifier, rather than relying on the technical specifications provided by Berkshire, to support his opinion regarding its value. However, the trial record does not indicate whether or not counsel requested that Mr. Wedoff examine the amplifier. Counsel may have determined that an examination was unnecessary or too costly, or counsel and/or Mr. Wedoff may have believed that the test results supplied by Mr. Lum were sufficiently reliable. Similarly, there is no evidence whether counsel sought to obtain information from the manufacturer of the isolator concerning its value.

Mr. Shetterly also contends that counsel should have obtained documentation of the sale transaction between Mr. Shetterly and Berkshire, i.e., Mr. Hendrickson's letter setting forth the modification of the amplifier. Mr. Shetterly's argument that the government should have disclosed the letter prior to trial as exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) has no merit. The letter did not constitute exculpatory evidence; it merely set forth Berkshire's agreement with the Department of Commerce. Any modification of the amplifier was only relevant to the amplifier's market value—an amount which was not material to this case because the actual selling price of the amplifier was greater than the $5,000.00 limit. In addition, even if the letter was exculpatory evidence or evidence that might have been used to impeach the government's witnesses, *see United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481 (1985), the disclosure of the letter to Mr. Shetterly's counsel at trial did not deny him a fair trial. *See United States v. Beverly*, 913 F.2d 337, 349–50 (7th Cir.1990) (due process is satisfied if disclosure is made before it is too late for the defendant to make use of any benefits of the evidence), *cert. denied*, —— U.S. ——, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991). Counsel received the letter during the trial and used it in cross-examining Mr. Lum.

■■■ Mr. Shetterly asserts that his counsel should have obtained evidence of any prior overseas sales of the amplifier by Berkshire, examined the records of the Bureau of Export Enforcement to determine whether export licenses were obtained for those sales, and gathered information about Mr. Mann. Counsel was not ineffective for failing to investigate these matters because they are not relevant to this case.

Therefore, upon reviewing the trial record, we find that Mr. Shetterly has not overcome the strong presumption of reasonableness accorded his counsel's actions. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. However, even if counsel's pretrial investigation was unreasonable, Mr. Shetterly has not shown any prejudice.

*See Weaver*, 882 F.2d at 1138. Mr. Shetterly's speculation about what evidence might have been found is insufficient to demonstrate prejudice. *See id.* at 1138–39; *Berkowitz*, 927 F.2d at 1382–83. Mr. Shetterly was required to make a showing of what the evidence would have been and how it would have produced a different result. *See Brown v. McGinnis*, 922 F.2d 425, 428 (7th Cir.1991).

**B.**

■■■ Mr. Shetterly maintains that trial counsel's courtroom actions deprived him of effective assistance. He notes that counsel made several objections to the admission of evidence and had repeated disputes with witnesses, opposing counsel and the district judge. Citing *United States v. Robinson*, 502 F.2d 894, 897 (7th Cir.1974), which noted that "[c]ompetent defense counsel may well share the view that frequent and repeated objections" may serve to alienate and antagonize the jury, Mr. Shetterly apparently argues that his counsel should not have objected as much as he did. However, such conduct is within the realm of counsel's trial strategies and tactics. *See Strickland*, 466 U.S. at 688–89, 104 S.Ct. at 2065; *United States v. Payne*, 741 F.2d 887, 891 (7th Cir.1984).

**C.**

Mr. Shetterly contends that his counsel was ineffective for failing to object to the admission of his prior acts. However, as we have found, that evidence was not improperly admitted. Although Mr. Shetterly alleges several other grounds of ineffective assistance of counsel, they have no merit and warrant no discussion.

**V.**

■■■ Finally, Mr. Shetterly argues that the district court misapplied the Sentencing Guidelines by refusing to depart below the Guidelines. *See* 18 U.S.C. § 3742(a)(2). The district court sentences a defendant within the range of the Sentencing Guidelines unless the court finds aggravating or mitigating factors of a kind or to a degree not adequately considered by the Commission in formulating the Guidelines. 18

U.S.C. § 3553(b); *United States v. Carey*, 895 F.2d 318, 322 (7th Cir.1990). In determining whether a circumstance was adequately considered by the Commission, a court can consider only the Guidelines themselves, along with its policy statements and the official commentary of the Commission. *Id.*

Our review of a sentence imposed under the Guidelines is limited by statute. 18 U.S.C. § 3742(e). We are required to give due regard to the opportunity of the district court to judge the credibility of witnesses, and the court's factual findings will be accepted unless they are clearly erroneous. The district court's application of the Guidelines to the facts is accorded due deference. *United States v. Guerrero*, 894 F.2d 261, 265 (7th Cir.1990).

Mr. Shetterly was sentenced pursuant to Guideline § 2M5.1, which provides for a base offense level of 22 "if national security or nuclear proliferation controls were invaded." One of the bases of the Export Administration Act is to protect national security. *See* 50 U.S.C.App. § 2402. Accordingly, the district judge sentenced Mr. Shetterly to 41 months of imprisonment, the minimum sentence in the applicable Guideline range. Mr. Shetterly alleges that trial counsel's petition to depart downward from the Guidelines was inadequate, and that the district court erred in failing to consider the implication of Application Note 2 of Guideline § 2M5.1, whereby a court can consider the degree to which the violation threatened a security interest of the United States, the volume of commerce involved, the extent of planning or sophistication, and whether there were multiple occurrences in determining a sentence within the Guidelines. The Note also provides that where such factors are present in an extreme form, a departure from the Guidelines may be warranted.

 Although Mr. Shetterly argues that the district court misapplied the Guidelines in sentencing him, *see* 18 U.S.C. § 3742(a)(2), he also asserts that the district judge's statements during sentencing suggest that he felt he lacked authority to depart from the Guidelines. The latter argument would constitute an appeal under

18 U.S.C. § 3742(a)(1), that the sentence was "imposed in violation of law." This court has no jurisdiction of an appeal of a sentence within the applicable Guideline range under § 3742(a)(2) on the ground that the district court's refusal to depart was a misapplication of the Guidelines. *United States v. Franz*, 886 F.2d 973, 978–79 (7th Cir.1989); *United States v. McCaleb*, 908 F.2d 176, 179 (7th Cir.1990); *United States v. Poff*, 926 F.2d 588, 590 (7th Cir.), *cert. denied*, ── U.S. ──, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991) (court of appeals has no jurisdiction to review a refusal to depart from Guidelines where refusal reflects an exercise of the district judge's discretion). However, we can review the district court's refusal to depart where it is the product of a conclusion by the district judge that he lacks authority to depart. *Poff*, 926 F.2d at 590–91 (district judge's belief that he had no authority to depart from the Guidelines is a legal conclusion, not an exercise of discretion); *Franz*, 886 F.2d at 981. Therefore, we must review the record to determine whether the district judge exercised his discretion in refusing to depart from the Guidelines or whether he felt that he lacked authority to depart.

In sentencing Mr. Shetterly, the district judge stated:

In this case it is fairly obvious, exporting these kinds of things outside the United States is something that Congress decided would be a threat to national security. What is a threat to national security in 1985, may not be a threat to national security in 1990. Technology changes, everybody catches up, Congress doesn't move very quickly. In any case, what you did, what you were found guilty of, was a crime at the time, and I don't know why it is not a crime today. ... [I]f I see something that [Congress didn't] consider [in the Guidelines], then I bring that up.... [A]ll of the things that [Mr. Shetterly has] urged in this case are taken into account by the Guidelines.... *And in this case I specifically don't see any reason to depart from these Guidelines* (emphasis added).

The district judge's statements indicate he considered that it would no longer be illegal to export the Berkshire amplifier out of the country without a license. The record does not indicate that the district judge believed he lacked authority to depart from the Guidelines; rather it is clear that the judge used his discretion in refusing to depart. Therefore, we have no jurisdiction to review his refusal to depart.

Mr. Shetterly's argument that the district court failed to consider whether he was eligible for a two-level reduction for the acceptance of reliability under Guideline § 3E1.1 has no merit. Whether Mr. Shetterly accepted responsibility was a question of fact for the district court to resolve. *United States v. Jordan,* 890 F.2d 968, 972 (7th Cir.1989). "The commentary to § 3E1.1 in particular instructs a court of appeals to be especially deferential in reviewing a finding that a defendant has not accepted responsibility because 'the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility.' " *Id.* (quoting Application Note 5).

The presentence report specifically addressed Mr. Shetterly's refusal to accept responsibility. Mr. Shetterly failed to object to any portion of the presentence report, other than a two-level increase for obstruction of justice. Although the district court did not consider a reduction for acceptance of responsibility at the sentencing hearing (because the issue was not raised), the court's judgment order provided that "the court adopts the factual findings in the presentence report as the applicable guideline factors" with the exception of a two-level increase for obstruction of justice. There was no error.

We AFFIRM Mr. Shetterly's conviction and sentence.