**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Sherman BROWN, Defendant–Appellant.**

**No. 92–2335.**

United States Court of Appeals, Seventh Circuit.

Argued May 5, 1993.

Decided Jan. 19, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied March 17, 1994.

338

Matthew R. Bettenhausen, Asst. U.S. Atty., John P. Collins (argued), Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Receiving, Appellate Div., Chicago, IL, for U.S.

Richard H. McLeese (argued), Decker & Associates, Chicago, IL, for Sherman T. Brown.

Before EASTERBROOK and ROVNER, Circuit Judges, and WILLIAMS, District Judge.*

---

* The Honorable Spencer Williams of the United States District Court for the Northern District of California, sitting by designation.

ILANA DIAMOND ROVNER, Circuit Judge.

After pleading guilty to kidnapping and use of a firearm during a crime of violence, Sherman Brown was sentenced under the Sentencing Guidelines to 168 months of incarceration. Brown appeals his sentence, arguing that the district court should have departed downward to reflect Brown's history of community service, and that it erred in failing to group various counts under Guidelines section 3D1.4.

## I. Background

On September 16, 1991, Brown gained entry to the home of Lorrain Anderson by posing as a federal agent. He told Anderson and her adult children Brenda and Steven that they were under arrest. Brown, who had learned that another Anderson son was involved in the drug trade and might be hiding a large sum of money in the house, handcuffed the Andersons, ordered them to lie on the floor, told them that he had a search warrant, and asked them where the cash might be hidden. When he found only $400, Brown pointed a gun at Lorrain Anderson and threatened to kill her if she did not produce more money. Although Brenda Anderson gave him $2000 more, Brown abducted Lorrain Anderson. Brown continued to represent himself as a federal agent throughout these events, admitting to Anderson only after the abduction that she was being held for ransom.

Brown took Anderson to Lebanon, Indiana, where he confined her in a motel room for thirty-six hours. During that time he placed numerous calls to the Anderson residence, threatening to kill Anderson if her family did not produce $3,000,000 in ransom. Brown disregarded the family's warnings that Anderson, who suffered from heart disease and diabetes, might not be able to survive the stress of the abduction. The ordeal ended on the morning of September 18, when Brown was arrested. During the commission of these crimes, Brown possessed a .22 caliber Intratec handgun and a .380 caliber pistol.

Brown was charged by way of a six-count indictment with (I) demanding and obtaining money while pretending to be a federal officer in violation of 18 U.S.C. § 912, (II) arresting and detaining Lorrain Anderson and searching her residence while pretending to be a federal officer in violation of 18 U.S.C. § 913, (III) arresting and detaining Brenda Anderson while pretending to be a federal officer in violation of 18 U.S.C. § 913, (IV) arresting and detaining Steven Anderson while pretending to be a federal officer in violation of 18 U.S.C. § 913, (V) kidnapping Lorrain Anderson for ransom and transporting her in interstate commerce in violation of 18 U.S.C. § 1201(a)(1), and (VI) using and carrying firearms during a crime of violence in violation of 18 U.S.C. § 924(c)(3). Brown pled guilty to counts V and VI on February 18, 1992, and a judgment of guilty was entered on those counts. Because Brown's plea agreement stipulated that he had committed the conduct charged in counts I–IV (R. 41 at ¶¶ 5–6), he was sentenced for that conduct as well, consistent with Guidelines section 1B1.2(c).

Guidelines section 2J1.4, which applies to impersonation offenses, provides that when an impersonation was committed to facilitate another offense, the guideline for that other offense should be applied if it would result in a higher offense level. U.S.S.G. § 2J1.4(c)(1). Finding that the impersonation offenses here were committed to facilitate the kidnapping of Lorrain Anderson, the district court applied the kidnapping guideline, U.S.S.G. § 2A4.1. That guideline provides a base offense level of twenty-four, which is to be increased by six levels if ransom was demanded. Brown therefore received a base offense level of thirty for each of counts I, II, III, IV and V.

The court then grouped counts I, II and V under Guidelines section 3D1.2(b) because they involved the same victim and a common criminal objective. The court considered counts III and IV as separate groups because they involved different victims. Because each of the three groups had an offense level of thirty, Brown's offense level was thirty-three—thirty plus three to reflect the existence of three groups bearing the same offense level. U.S.S.G. § 3D1.4. After a two-level reduction for acceptance of re-

sponsibility, Brown's total offense level was thirty-one, which, combined with criminal history category I, produced a sentencing range of 108–135 months. The court sentenced Brown at the very bottom of that range to 108 months. 18 U.S.C. § 924(c)(1) mandated a minimum consecutive sentence of sixty months for count VI, so that Brown's total sentence was 168 months.

## II. Failure to Depart

Brown argues that the district court erred in refusing to depart downward to account for his history of community service. Brown, who owned a donut shop, focuses mainly on the fact that he used to deliver twenty dozen freshly baked donuts to a local homeless shelter five times each week.

 We are without jurisdiction to review a district court's refusal to depart unless it rests on an erroneous legal conclusion that the court lacked authority to do so. *United States v. Poff,* 926 F.2d 588, 590–91 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991); *United States v. Franz,* 886 F.2d 973, 978 (7th Cir. 1989). In this case, the district judge explained his decision as follows:

As far as your motion for departure is concerned, I am not sure whether the guidelines in this case or in many cases before me really do the system justice by putting a Judge in a straightjacket in terms of a sentencing range that because of the many facets of the crime and of the individual very often is artificial, even though the guidelines purport to consider every possibility of—or every nuance of the offense and the defendant's background.

*I do know that in order for me to depart there must be something that is involved in the case that the guidelines do not purport to take into consideration.* And that although I may like to reach out and determine that the factors that the guidelines consider do not adequately reflect what's best for society and what's best for you, I cannot do that absent an agreement

by the government that they won't appeal from any sentence that I impose. . . .

*It's clear, though, that the guidelines do contemplate the multiple count situation, they do contemplate the good deeds that you have done,* and I don't minimize those good deeds. . . .

What you did is commendable, and by saying that I am not going to depart for what you have done in the past in terms of your donation to the Mission does not in any way demean or minimize what you have done long before you were in trouble here.

(May 28, 1992 Tr. at 39–40) (emphasis added). In other words, the district judge was clearly aware that 18 U.S.C. § 3553(b) authorizes departures only to account for factors not taken into account by the Guidelines, and he determined that no such factors existed in this case. In previous cases, we have held that a district court's finding regarding the existence of factors that would justify departure is discretionary and not a question of law. In *United States v. Shetterly,* 971 F.2d 67 (7th Cir.1992), for example, the district judge had stated:

[A]ll of the things that [Mr. Shetterly has] urged in this case are taken into account by the Guidelines ... And in this case I specifically don't see any reason to depart from these Guidelines.

*Id.* at 76 (emphasis omitted). We held that that determination was an exercise of discretion over which we lacked appellate jurisdiction. Similarly, in *Franz,* the case in which we first held that refusals to depart were unreviewable unless based on an error of law, the district judge's refusal to depart was based on his finding that "all of those things are considered in the guideline range." 886 F.2d at 976. We therefore lack jurisdiction to review the district judge's discretionary determination that the Guidelines adequately accounted for the factors that Brown had raised in support of departure.[1]

1. Brown notes that the district judge made several comments indicating his displeasure with the Guidelines' effect in this case. But contrary to

Brown's characterization, those editorial comments do not amount to legal conclusions regarding the authority to depart.

### III. Application of the Grouping Guideline

Brown next contests the district court's decision not to group counts III and IV, which pertain to Brenda and Steven Anderson, with counts I, II and V, which pertain to Lorrain Anderson.[2] *See* U.S.S.G. § 3D1.2 (providing that grouping is appropriate when counts involve the same victim). The court's decision was based on Application Note 2 to Guidelines section 3D1.2, which provides that "[t]he term 'victim' is not intended to include indirect or secondary victims." Thus, although the court had found that the offenses charged in counts III and IV were committed in order to facilitate the kidnapping of Lorrain Anderson, it determined that she was not the "victim" of those offenses and that they should not be grouped with counts I, II and V.

■ Brown does not object to the separate grouping of counts involving different victims, but argues that Brenda and Steven were not the victims of counts III and IV. His argument rests on the district court's determination that those offenses were committed for the purpose of facilitating the kidnapping and its resulting decision to apply the kidnapping guideline to those counts. He reasons that because the kidnapping guideline was applied, Lorrain, rather than Brenda and Steven, must be considered the victim of those offenses. But the fact that an offense may have been committed for the purpose of facilitating another offense does not necessarily mean that the offense cannot have its own separate victim. If one were to commit murder in the course of robbing a bank, for example, the murder would have been committed for the purpose of facilitating the bank robbery, even though its victim would clearly be the murdered person and not the bank. Thus, although the impersonation offenses may have been committed to facilitate the kidnapping of Lorrain Anderson, they are nonetheless separate offenses whose victims were Brenda and Steven. The district court therefore did not err in grouping those counts separately.

■ Brown also argues that the court's application of the grouping guideline should be reversed because his sentence, which was the same as it would have been if he had kidnapped three people, violates the principles of proportionality and uniformity. He relies on the "Policy Statement" that prefaces the Guidelines, which sets out those goals of the sentencing system. *See* Guidelines Manual at 2. But our review of Guidelines sentences is limited (*see* 18 U.S.C. § 3742) and does not include a determination of whether a particular sentence successfully effectuates the general goals of the Guidelines. Such questions rest with the Sentencing Commission and are not the province of this court.

■ Finally, Brown contends that if the court's application of the grouping guideline was correct, it should have departed downward to account for the lack of uniformity and proportionality. The court's decision not to do so is an unreviewable exercise of discretion for the reasons already articulated in Part II of this opinion. As with the earlier departure, the district judge's determination here amounted to a discretionary determination that the Guidelines already took this situation into account. *See, e.g.,* May 28, 1992 Tr. at 39–40 ("It's clear … that the guidelines do contemplate the multiple count situation….") In any event, such a departure would have been erroneous as a matter of law. *See United States v. Panadero,* 7 F.3d 691, 696–97 (7th Cir.1993) (departure to avoid result mandated by grouping guideline is erroneous barring unusual circumstances).

### IV. Judgment Form

Finally, Brown points to an error in the judgment and commitment form, which reads, "[t]he defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of ONE HUNDRED EIGHT MONTHS (108) on Counts 5 and 6 to run concurrent, to be followed by a mandatory term of Five (5) Years on Count 6." As Brown points out and

---

**2.** If all of the counts had been grouped together, Brown's offense level for the group would have been thirty and would not have been increased by three to account for the existence of three groups. With the two-level reduction for acceptance of responsibility, that would have resulted in an offense level of 28 and a sentencing range of 78–97 months.

the government concedes, the 108 month sentence was actually imposed only on count 5 and not on count "6 to run concurrent." This case will therefore be remanded for the limited purpose of correcting that error.

### V. Conclusion

Brown's sentence is affirmed. The case is remanded for the limited purpose of correcting the erroneous statement of his sentence on the judgment and commitment form.