25 F.3d 1054
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Samuel DIAZ, Oralia De La Torre, and Raul Ibarra,
Defendants-Appellants.
 Nos. 93-1630, 93-1714, 93-1715.
 United States Court of Appeals, Seventh Circuit.
 Argued April 7, 1994.
Decided June 6, 1994.
 
 1
 Before FLAUM and ROVNER, Circuit Judges, and CRABB, Chief District Judge.*
 
 ORDER
 
 2
 In May 1992, Samuel Diaz, Oralia De La Torre, Raul Ibarra, and several others were indicted as members of a conspiracy to distribute heroin that allegedly existed between February 21 and April 8, 1992. Diaz pled guilty to two counts of distribution within one thousand feet of a school in violation of 21 U.S.C. Secs. 841(a)(1) and 860. He proceeded to trial on the conspiracy charge, however, along with De La Torre and Ibarra. The day after opening statements, Diaz was excused from the trial when the government dismissed the remaining charge against him. A jury subsequently found De La Torre guilty of one count of distributing heroin within one thousand feet of a school, 21 U.S.C. Secs. 841(a)(1) and 860, but acquitted her of the conspiracy charge. Ibarra was convicted on the conspiracy count and six counts of distributing heroin within one thousand feet of a school. 21 U.S.C. Secs. 841(a)(1), 846, 860. Diaz appeals his sentence; De La Torre her conviction; and Ibarra both his conviction and sentence. We affirm.
 
 Motion for Mistrial
 
 3
 After the remaining charge against Diaz was dismissed, De La Torre and Ibarra moved the district court for a mistrial. The court denied the motion as well as Ibarra's post-trial motion, and they now appeal. They argue that because the jurors learned during opening statements that Diaz had already pled guilty to two distribution counts, the jurors would infer from Diaz' subsequent absence that he also pled guilty to the conspiracy charge, thereby indicating that his co-defendants were guilty as well. We review for an abuse of discretion.[1] United States v. Davis, 15 F.3d 1393, 1399 (7th Cir.1994).
 
 
 4
 When one defendant in a multi-defendant trial becomes absent during trial for any reason, "the best practice is to acknowledge his absence to the jury and to instruct them that it should have no effect on their deliberations regarding the remaining defendants." United States v. Barrientos, 758 F.2d 1152, 1156 (7th Cir.1985), cert. denied, 474 U.S. 1062 (1986). In Barrientos, we held that a cautionary instruction given in an earlier case, see United States v. Phillips, 640 F.2d 87, 91 (7th Cir.), cert. denied, 451 U.S. 991 (1981), was exemplary because it informed the jury of the co-defendant's absence without providing a reason and because it stressed to the jurors their duty to judge independently the guilt or innocence of each remaining defendant. Barrientos, 758 F.2d at 1156.
 
 
 5
 In this case, the district court gave a similar cautionary instruction.[2] When the jury reconvened after the government had dismissed the remaining charge against Diaz, the district court informed the jury that Diaz was no longer a party to the case and that his absence should have no bearing on its consideration of the charges against the remaining defendants, nor should Diaz' absence be made a part of the jury's deliberations at the conclusion of the trial. The court emphasized that the jury should "not speculate, guess, or conjecture about [his absence] in any way." In addition, before deliberations, the court instructed the jurors to give separate consideration to each defendant by analyzing the evidence presented at trial with respect to each of them and to disregard the opening statements of counsel to the extent they were not supported by the evidence. Thus, the instructions in this case were substantively indistinguishable from the Phillips instruction we found to be "exemplary" in Barrientos. See also United States v. Towns, 913 F.2d 434, 444 (7th Cir.1990); cf. United States v. Canino, 949 F.2d 928, 937 (7th Cir.1991) (any possible prejudicial effects from the removal of counsel and his client from the proceedings was cured by instructions to the jury, reminding them of their duty to consider the evidence against each defendant separately), cert. denied, 112 S.Ct. 1940 (1992).
 
 
 6
 It is generally assumed that the jury follows the district court's instructions. United States v. Schweihs, 971 F.2d 1302, 1321 (7th Cir.1992). Accordingly, cautionary instructions are presumed to be curative. United States v. Martin, 964 F.2d 714, 717 (7th Cir.1992). Because Ibarra and De La Torre do not establish otherwise, we hold that the district court did not abuse its discretion in denying the motion for mistrial.
 
 Sufficiency of the Evidence
 
 7
 De La Torre and Ibarra also challenge the sufficiency of the evidence supporting their convictions. They carry a heavy burden on appeal because we draw all reasonable inferences from the evidence in favor of the government; we will affirm the convictions if any rational trier of fact could have found the defendants guilty beyond a reasonable doubt. United States v. Hubbard, No. 93-1304, slip op. at 8 (7th Cir. Apr. 27, 1994).
 
 
 8
 De La Torre claims that the evidence was insufficient to convict her of distributing heroin on February 21, 1992. Because De La Torre failed to move for a judgment of acquittal at the close of trial or file a post-trial motion, she forfeited her right to raise this issue on appeal unless she can show that her conviction constitutes a manifest miscarriage of justice. United States v. Pless, 982 F.2d 1118, 1122 (7th Cir.1992).
 
 
 9
 Undercover police officer Alfonzo Bautista testified that he met Carlos Jimenez[3] and Samuel Diaz on February 21 to buy one gram of heroin. Diaz told Bautista that he had called a woman to arrange the delivery, and the two of them then went to meet her. When De La Torre arrived at the meeting place, Diaz entered her vehicle, and they drove around the block. Diaz returned with a plastic bag containing black tar heroin which he then sold to Bautista. After the exchange, Diaz returned to De La Torre's car, climbed into the back seat of the vehicle, and handed her money. In light of this evidence, De La Torre cannot demonstrate that her distribution conviction was a manifest miscarriage of justice.
 
 
 10
 To establish Ibarra's participation in the conspiracy, the government must demonstrate that a conspiracy existed and that Ibarra knowingly joined it. United States v. Cabello, 16 F.3d 179, 181 (7th Cir.1994). The government may rely exclusively on circumstantial evidence. United States v. Rivera, 6 F.3d 431, 444 (7th Cir.1993), cert. denied, 114 S.Ct. 1098 (1994). The six substantive counts of distribution require proof that Ibarra intentionally distributed heroin on February 28, March 10, March 25, March 27, April 3, and April 8, 1992. 21 U.S.C. Sec. 841(a)(1). Ibarra argues that he was not a participant in the conspiracy but was merely an innocent bystander. He explains his presence during the heroin transactions and his associations with the various co-conspirators as a consequence of the fact that he lived in the same neighborhood where the co-conspirators resided and sold heroin. We nonetheless find that at least one rational interpretation of the evidence supports Ibarra's conviction.
 
 
 11
 Ibarra was observed in the area of each transaction, beginning with the February 28 heroin sale, although he was never present during the actual transfer of money for heroin. On February 28, co-defendant Abel Rodriguez met Bautista at a restaurant to arrange a heroin sale. Rodriguez left the restaurant several times to check on the status of the heroin, and each time he conferred with Ibarra, returning to Bautista with new information. First, Rodriguez stated that the delivery was delayed because the heroin was coming from Cicero. Next, Rodriguez indicated that an individual known as "Chino" said that the heroin was being weighed. After a third meeting with Ibarra, Rodriguez directed Bautista to drive to a parking lot where the transaction was consummated. From this testimony, the jury could reasonably infer that Ibarra was not only involved in the February 28 sale, but that he played an active organizational role in the logistics of the transaction.
 
 
 12
 Additional evidence established that immediately after the March 10 and March 25 transactions, either Diaz or Juan Carlos Mendoza met with Ibarra. Officer John Molloy of the Drug Enforcement Administration (DEA) Task Force testified that on March 27, after Mendoza sold one-half ounce of heroin to Bautista, Mendoza met Ibarra on the street where Ibarra proceeded to methodically count a handful of folded bills. On April 3, Bautista saw Ibarra drive by before another transaction with Mendoza. Thereafter, Mendoza was observed meeting with Ibarra only a short distance away, entering Ibarra's vehicle, and handing folded bills to Ibarra. On April 8, Ibarra was seen again driving around the area before the sale. He then parked in an alley. Mendoza met with Bautista and told him that he could meet "the main guy" in a nearby alley, but Bautista declined. During the meeting, Mendoza left briefly to confer with Ibarra. Shortly thereafter, Ibarra was arrested wearing a gold bracelet with the letters C-H-I-N-O on it and a pager.
 
 
 13
 Ibarra's presence and timely meetings with either Diaz or Rodriguez at each of the heroin transactions support an inference that he was a knowing participant in the conspiracy and not an innocent bystander. See United States v. Rosalez-Cortez, No. 93-1239, slip op. at 8-9 (7th Cir. Mar. 24, 1994); United States v. Collins, 966 F.2d 1214, 1220 (7th Cir.1992) (continued presence during key overt acts in furtherance of a conspiracy is material evidence of defendant's membership). The inference is strengthened by the transfer of money to Ibarra on at least two occasions and the confiscation of Ibarra's bracelet, identifying him as "Chino"--the name of the person who informed Rodriguez on February 28 that the heroin was being weighed. In addition, Ibarra's pager responded to a telephone number that the confidential informant had provided Bautista and that allegedly belonged to "Charlie," a/k/a Mendoza. This evidence is more than sufficient to support Ibarra's convictions on the conspiracy charge and on the six substantive distribution counts.
 
 
 14
 Alternatively, Ibarra contends that the government failed to prove a single conspiracy beginning on February 21 and ending April 8. Specifically, he argues that he was not charged in relation to the February 21 transaction and that there was no evidence connecting him with Carlos Jimenez and De La Torre, the principals in the February 21 deal. He also notes that there was no evidence linking him with an individual named Salazar, who was involved in an aborted transaction on March 18.
 
 
 15
 The members of a conspiracy, however, do not need to know all the other co-conspirators or participate in every aspect of the conspiracy. United States v. Soto-Rodriguez, 7 F.3d 96, 100 (7th Cir.1993). And although there is no evidence placing Ibarra at the scene of the February 21 transaction, the record establishes a cooperative relationship between Diaz, Rodriguez, and Ibarra, indicating that they participated in a single distribution ring. Collins, 966 F.2d at 1221. The brief appearances of Jimenez and De La Torre do not undermine such a finding. United States v. Sophie, 900 F.2d 1064, 1081 (7th Cir.), cert. denied, 498 U.S. 843 (1990) ("A conspiracy may have a small core of people with whom other conspirators act to achieve the conspiracy's goal"). Moreover, in addition to the facts already discussed, Rodriguez told Bautista on February 28 that he and Diaz worked for the same guy. And on March 10 and March 25, Diaz and Rodriguez confirmed that the heroin Bautista continued to buy was supplied from the same source. Thus, the record as a whole supports a finding that a single conspiracy existed and that Ibarra was one of its members.
 
 
 16
 Ibarra as the Organizer or Leader of the Conspiracy
 
 
 17
 Ibarra received a four-level enhancement at sentencing pursuant to U.S.S.G. Sec. 3B1.1(a) (Nov. 1992) for his role as a leader in the conspiracy. He argues that he should not have received any enhancement for his role in the offense. Alternatively, he contends that his offense level should have been increased three rather than four levels under U.S.S.G. Sec. 3B1.1(b) because he was, at most, a manager or supervisor of the conspiracy. We review for clear error. 18 U.S.C. Sec. 3742(e).
 
 
 18
 The sentencing court found that there was substantial evidence to classify Ibarra as a leader rather than a supervisor of the conspiracy:
 
 
 19
 Looking at all the evidence, in my opinion, this is a criminal activity, and Raul Ibarra ... was the leader of a criminal activity that was involved in the indictment that was charged, and I won't go through all of the evidence, I don't think it's necessary for me to do that, but I think there is ample evidence to support it.... I believe that the Government proved that beyond a reasonable doubt.
 
 
 20
 * * *
 
 
 21
 [T]he way I look at it is this was a distribution activity that went on. Admittedly he didn't manufacture the heroin; he got it from somebody else. But the evidence indicated to me, anyway, beyond a reasonable doubt that he was the leader of this distribution network, this conspiracy to distribute heroin.
 
 
 22
 Sen.Tr. at 14-16. Although we believe that the characterization of Ibarra as the leader rather than the supervisor of the distribution ring is a closer question than the sentencing court suggests, we do not find its conclusion to be clearly erroneous. To distinguish between a leadership and a supervisory role, the commentary to the Guidelines exhorts the courts to consider several factors, including the degree to which the defendant plans and organizes the offense and the degree of control and authority he exercises over the other co-conspirators. U.S.S.G. Sec. 3B1.1, comment. (n. 3).
 
 
 23
 Here, the evidence suggests that Ibarra was the behind-the-scenes organizer of the conspiracy. Bautista was told that Rodriguez and Diaz worked for the same person.[4] Ibarra was present at every transaction, and on at least two occasions, Rodriguez and Mendoza consulted with him in the course of the sales. On February 28, for example, Rodriguez explained the reasons for the delay in the delivery only after frequently consulting with Ibarra. Furthermore, after each transaction, either Rodriguez or Mendoza immediately met with Ibarra, who was always only a short distance away. Moreover, Ibarra was identified as the "main guy" by Mendoza during the last transaction.[5] Finally, Mendoza was twice seen handing the entire proceeds from the drug sale to Ibarra, indicating that Ibarra controlled the proceeds from the sales. Accordingly, although we do not find the evidence in this case to be overwhelming, we conclude that application of the four-level enhancement under Sec. 3B1.1(a) was not clearly erroneous. Cf. United States v. Spears, 965 F.2d 262, 274 (7th Cir.) (leadership role upheld because defendant bought cocaine out-of-town and distributed to several people using a pager system, and other distributors relied on him to supply them with cocaine), cert. denied, 113 S.Ct. 502 (1992).
 
 Ibarra's Criminal History Category
 
 24
 Ibarra also contends that the district court erred in calculating his Criminal History category under the Sentencing Guidelines. He claims that the court erroneously treated two convictions as unrelated offenses, thereby increasing the number of criminal history points he received.
 
 
 25
 Ibarra was arrested for burglary in December 1982. When he failed to appear in court, Ibarra was indicted for a violation of bail bond and was arrested in May 1985. He pled guilty to both charges at the same state proceeding and received concurrent two-year sentences. Ibarra argues that these offenses should be considered related because the bond violation was intertwined with the theft charge, and the two were consolidated for sentencing purposes.
 
 
 26
 The Sentencing Guidelines, however, are very clear: "Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. Sec. 4A1.2, comment. (n. 3). Although Ibarra notes that the government never established that he was arrested for the bond violation, the "intervening arrest" mentioned in the commentary refers to the arrest for the first offense; that is, for the burglary charge. Because no one disputes that Ibarra was arrested for burglary, the district court properly considered the two convictions as separate offenses.
 
 Samuel Diaz
 
 27
 Diaz contends that the district court erroneously believed it lacked the authority to depart downward from the Sentencing Guidelines even though Diaz' status as a career offender under U.S.S.G. Sec. 4B1.1 allegedly overstated his criminal history.
 
 
 28
 Diaz has two prior convictions for residential burglary and the delivery of heroin. Although the court noted that these crimes were of a "lesser nature," it also stated that they were sufficiently serious to warrant career offender status under the Sentencing Guidelines. Finding no other mitigating circumstances of a kind and to a degree that would support a downward departure, the court refused to depart. Thus, contrary to Diaz' belief, even though the court expressed its dissatisfaction with the Guidelines at the sentencing hearing, the court was fully aware of its ability to depart if the facts warranted such action. See United States v. Brown, 14 F.3d 337, 340 n. 1 (7th Cir.1994). Accordingly, we lack jurisdiction to review Diaz' sentence. Id. at 340.
 
 
 29
 AFFIRMED.
 
 
 
 *
 The Honorable Barbara B. Crabb, Chief District Judge of the United States District Court for the Western District of Wisconsin, is sitting by designation
 
 
 [1]
 De La Torre's appeal is subject to a lower standard of review because she failed to renew her objection in a post-trial motion. However, we do not separately address her claim because it fails even under the abuse of discretion standard applicable to Ibarra's claim
 
 
 [2]
 Defendants' consolidated brief asserts that no cautionary instruction was given. At oral argument, however, defendants admitted that an instruction was given and that they were actually disputing the adequacy of that instruction
 
 
 [3]
 In the indictment, Jimenez was also charged with conspiracy. However, because he fled before trial, his case was severed from the remaining defendants
 
 
 [4]
 Although Bautista was reassured several times that he heroin came from the same source, the sentencing court concluded that Ibarra could not be identified as the supplier of the drugs because no evidence was presented at trial on this issue. Sen.Tr. at 6-7
 
 
 [5]
 Ibarra notes that there was evidence at trial that a man known as "Beto" was the leader of the conspiracy. Even if true, the Sentencing Guidelines recognize that more than one person may be considered a leader or organizer of a criminal activity. See U.S.S.G. Sec. 3B1.1, comment. (n. 3). Although the reference to Ibarra as the "main guy" is not dispositive, it supports the inference that he held a leadership position. Id. (for sentencing purposes, titles such as "kingpin" or "boss" do not control whether an individual was an organizer or leader)