**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Girtha L. GULLEY, Defendant–
Appellant.**

**No. 92–3766.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 17, 1993.

Decided April 22, 1993.

Hilary W. Frooman, Asst. U.S. Atty. (argued), Danville, IL, for plaintiff-appellee.

Richard H. Parsons (argued), Peoria, IL, for defendant-appellant.

Before EASTERBROOK and KANNE, Circuit Judges, and WILL, Senior District Judge.*

KANNE, Circuit Judge.

Girtha Gulley was convicted of having made a false statement before a federal grand jury, in violation of 18 U.S.C. § 1623. On appeal, Ms. Gulley's primary challenge is aimed at the district judge's refusal to make a downward departure when imposing her sentence. Finding we lack jurisdiction to review that claim, we dismiss that portion of her appeal. In addition, Ms. Gulley raises a constitutional challenge to her sentence and disputes the validity of her conviction on various bases. Because these arguments are unpersuasive, we affirm both her conviction and sentence.

## I.

In 1988, Ms. Gulley was the chairperson of the Peoria Citizens Committee for Economic Opportunity ("PCCEO"). At that time, the federal government was investigating Michael Banks and McFarland Bragg, PCCEO employees, concerning a scheme to defraud PCCEO which included a $60,000 loan from the organization to one Bradley West. In connection with this investigation, Ms. Gulley was subpoenaed to testify and was instructed to bring certain documents to a federal grand jury on July 27, 1988. Ms. Gulley complied with the subpoena, and arrived with documents and an attorney on the appointed date.

Before the grand jury, Ms. Gulley testified that a meeting of the PCCEO executive committee took place on December 23, 1987. According to Ms. Gulley, Michael Banks made a presentation that day describing the Bradley West loan to the board. Ms. Gulley further stated that she recalled the meeting because it was just before Christmas and it took place over the lunch hour. During her testimony, Ms. Gulley relied heavily on transcribed minutes of the meeting that she had brought with her.

As it turns out, there never was a meeting on December 23, 1987; Ms. Gulley was sub-

sequently indicted for perjury. The indictment specifically charged that Ms. Gulley made two false statements and utilized false documents. At her perjury trial, two persons named in the meeting's "minutes" as present testified that they were elsewhere on December 23, 1987, and thus never attended a PCCEO executive board meeting. Another PCCEO employee testified that she often took minutes at executive board meetings, but had not on December 23, 1987. She also testified that when she did not take the minutes herself, she usually received handwritten minutes to transcribe immediately after a meeting was held. She did not receive minutes of the December 23, 1987 meeting until May or June 1988; they were given to her by Michael Banks and were in his handwriting.

During her trial testimony, Ms. Gulley admitted that there had never been a meeting on December 23, 1987. However, she maintained that there had been a meeting in November or December in which the Bradley West loan was discussed. She testified that when she was before the grand jury, she did not think any of her answers were false. The jury convicted Ms. Gulley only of making a false statement regarding the December 23, 1987 meeting. Pursuant to the Sentencing Guidelines, Ms. Gulley was placed at offense level 12 and criminal history category I—resulting in a range of 10–16 months imprisonment. The Guidelines require that at least half of the jail sentence actually be spent in prison when a defendant reaches an offense level of 12. Thus, Ms. Gulley could not avoid time in prison without a departure.

United States District Judge Michael M. Mihm refused to depart downward from the Guidelines and sentenced Ms. Gulley to five months in prison followed by two years of supervised release, including five months of home confinement. Ms. Gulley appeals her sentence, arguing that the district court should have granted her a downward departure because her behavior was aberrant.

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is sitting by designation.

## II.

A trial judge may depart from the Sentencing Guidelines only if mitigating or aggravating circumstances exist which were not taken into account by the Sentencing Commission when it formulated the Guidelines. 18 U.S.C. § 3553(b). According to the Commission, it "has not dealt with the single acts of aberrant behavior that still may justify probation at higher offense levels through departures." Ch. 1, Pt. A, Intro. ¶ 4(d). As a result, district courts have authority to depart downward in these circumstances. According to Ms. Gulley, the conduct which led to her perjury conviction was a single aberrant act in an otherwise exemplary life, and thus Judge Mihm should have departed from the Guidelines.

This court recognizes that consistent with the Guidelines a single act of aberrant behavior can support a downward departure. *United States v. Andruska*, 964 F.2d 640, 645 (7th Cir.1992); *United States v. Carey*, 895 F.2d 318, 324 (7th Cir.1990). That we have yet to uphold a downward departure based on aberrant behavior means only that we have not had the appropriate facts before us; it does not mean that we do not recognize that such a case can exist under the Guidelines. In the future, we will continue to closely scrutinize the facts of each case in order to determine whether aberrant behavior justifying a downward departure is present. In the instant case, however, jurisdictional defects prevent us from addressing the issue of whether perjury may qualify as an aberrant act justifying a downward departure.

It is well settled that we do not have jurisdiction to review a district court's discretionary refusal to grant a downward departure. *United States v. Franz*, 886 F.2d 973, 978 (7th Cir.1989). *See also United States v. Shetterly*, 971 F.2d 67, 76 (7th Cir.1992); *United States v. Dumont*, 936 F.2d 292, 296–97 (7th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 349 (1991). We may only review a district court's refusal to depart if it "is based on an erroneous legal conclusion about the court's authority to depart." *United States v. Poff*, 926 F.2d 588, 591 (7th Cir.), *cert. denied*, —— U.S. ——,

112 S.Ct. 96, 116 L.Ed.2d 67 (1991). Neither Ms. Gulley nor the government disagree with these basic principles. Instead, the parties differ as to whether Judge Mihm exercised his discretion in denying the downward departure or whether he mistakenly believed that the Guidelines did not grant him the authority to depart for aberrant behavior.

During sentencing, Judge Mihm stated:

> I have given considerable thought to this and I have done quite a bit of independent research on my own regarding this matter. *I have looked for a reason, a lawful reason, for me to depart downward from the guidelines, and I cannot find one.* I would ... be very happy to depart downward to a level 10 in this case, but none of the reasons offered by defense counsel have merit.
>
> \* \* \* \* \* \*
>
> *Aberrant behavior, while I don't have any problem with applying that term to the facts of this case, I do not believe that that is a justification that would be accepted by the Seventh Circuit.*
>
> \* \* \* \* \* \*
>
> But since I cannot justify as a matter of conscience a sentence that departs from the guidelines, then I must sentence her pursuant to those guidelines. If I were to do otherwise it would mean in my mind I would become a law breaker and I also believe that with certainty any more lenient sentence, would result in a reversal, so from a practical point of view I don't believe that any purpose would be served by a less severe sentence. (*emphasis added*).

If Judge Mihm had said, "The Guidelines do not permit a downward departure for a single act of aberrant behavior," it would be clear that he believed he lacked the authority to depart, and we would remand for resentencing. But that is not what Judge Mihm said. Instead, he said that, in light of Seventh Circuit precedent, the facts of this case did not justify granting a downward departure. We believe this language demonstrates that Judge Mihm exercised his discretion in refusing to depart.

We recently examined a trial judge's statements during sentencing to determine whether we had jurisdiction over the defendant's appeal. *Shetterly*, 971 F.2d at 76. In *Shetterly*, we held that the following language used by the judge during sentencing clearly indicated an exercise of discretion which precluded our review: *"And in this case I specifically don't see any reason to depart from these Guidelines."* *Id.* We cannot distinguish Judge Mihm's comments from the language in *Shetterly* which prevented our review.

We find further support for our conclusion in *United States v. Denardi*, 892 F.2d 269 (3rd Cir.1989). In *Denardi*, the trial judge refused to depart and explained: "I have been asking and trying to get some factor that would justify a deviation, and I just said I haven't found any." *Id.* at 271. The Third Circuit dismissed the appeal for want of jurisdiction stating:

> One may ask why the district court would be looking for factors that would justify a deviation, if it believed that it lacked authority to deviate.

Similarly, we believe that Judge Mihm's statements indicate that he knew he could depart for a single act of aberrant behavior, but decided that the facts in this case could not support a downward departure. *See also United States v. Bayerle*, 898 F.2d 28, 31 (4th Cir.) (dismissing appeal since district court's refusal to depart was based on its conclusion that the evidence did not justify a departure), *cert. denied*, 498 U.S. 819, 111 S.Ct. 65, 112 L.Ed.2d 39 (1990). Because we lack jurisdiction to review the district court's discretionary refusal to grant Ms. Gulley a downward departure, this portion of her appeal is dismissed.

■ Ms. Gulley has another objection to her sentence, however. During sentencing, Judge Mihm stated that he thought the defendant's sentence was "not just." According to Ms. Gulley, these remarks demonstrate that her sentence violates not only the Due Process clause of the Fifth Amendment, but her right to be free from cruel and unusual punishment under the Eighth Amendment.

Ms. Gulley's argument is wholly without merit. A sentencing judge's feelings and opinions about a defendant's sentence have nothing to do with due process. Moreover, the only authority Ms. Gulley cites to support her argument is *Morrisey v. Brewer*, 408 U.S. 471, 485–86, 92 S.Ct. 2593, 2602–03, 33 L.Ed.2d 484 (1972), in which the Supreme Court concluded that due process required parolees to receive some type of hearing before their paroles were revoked. Such a case is irrelevant; Ms. Gulley has not complained that procedural infirmities distorted the sentencing process. Ms. Gulley's sentence was proper under the Guidelines and we affirm it.

## III.

■ According to Ms. Gulley, insufficient evidence supports her conviction. A defendant who asserts an insufficiency of the evidence challenge bears a heavy burden. *United States v. Van Wyhe*, 965 F.2d 528, 531 (7th Cir.1992). We view the evidence in the light most favorable to the government to determine whether a reasonable juror could find all the essential elements of the crime beyond a reasonable doubt. *Id.* To sustain a perjury conviction, the government must prove that, while under oath, the defendant knowingly made a statement that was both false and material. 18 U.S.C. § 1623; *United States v. Watson*, 623 F.2d 1198, 1201 (7th Cir.1980); *United States v. Smith*, 538 F.2d 159, 163 (7th Cir.1976).

■ Ms. Gulley believes that the evidence did not show that her false statement was material—an essential element of the crime. Ms. Gulley reasons that her testimony regarding the December 23, 1987 board meeting was not material because, in order to indict Banks and Bragg for fraud, the government did not need to prove that the West loan had been made without prior board approval.

■ Materiality is a question of law which we review *de novo*. *United States v. Raineri*, 670 F.2d 702, 718 (7th Cir.), *cert. denied*, 459 U.S. 1035, 103 S.Ct. 446, 74 L.Ed.2d 601 (1982); *Watson*, 623 F.2d at 1201. A statement is material if it has the potential "to impede, influence, or dissuade

the grand jury from pursuing its investigation." *United States v. McComb*, 744 F.2d 555, 563 (7th Cir.1984) (citing *United States v. Picketts*, 655 F.2d 837 (7th Cir.), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 602, 70 L.Ed.2d 592 (1981)). Thus, the government does not need to prove that the grand jury's investigation was *actually* impeded. *Raineri*, 670 F.2d at 718.

■ However, the government has the burden of producing evidence of the scope of the investigation to establish the relationship between the defendant's false statement and the grand jury's investigation. *McComb*, 744 F.2d at 564. The government may meet its burden by, *inter alia*, having the grand jury prosecutor testify and presenting the indictments ultimately returned by the grand jury. *Id.*

After reviewing the record, there is no doubt that the government produced sufficient evidence to demonstrate that Ms. Gulley's false statement was material to the grand jury's investigation. Concerning the scope of the investigation, the grand jury prosecutor testified that he was trying to determine whether the West loan was truly fraudulent. From Ms. Gulley he hoped to determine whether the PCCEO board knew about the loan. The prosecutor testified that:

> [O]ne of the key things we didn't really know yet was how much did the board know, if anything, about this loan. Obviously the more the board knew about it, the less suspicious the loan would have looked. If it were done with the knowledge and approval of the board, that would have been more of an indication that this was a proper loan. Without the knowledge of the board, it would have been more suspicious.

In addition to the prosecutor's testimony, the indictments returned by the grand jury were introduced. From this evidence, a reasonable juror could conclude that Ms. Gulley's false statement—which indicated that the board was aware of Banks' loan to West—had the potential to dissuade the grand jury from pursuing its investigation of Banks' allegedly fraudulent activities. Because sufficient evidence proved that the de-

fendant's false statements were material, her conviction must stand.

Ms. Gulley's claim that her conviction cannot be sustained because the questions she was asked before the grand jury were not precise enough under *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), is without merit. The prosecutor's questions were clear and Ms. Gulley's answers were responsive, thus *Bronston* was not violated. *See United States v. Niemiec*, 611 F.2d 1207, 1210 (7th Cir.1980). *See also United States v. Yasak*, 884 F.2d 996, 1002 (7th Cir.1989).

**IV.**

Girtha Gulley's appeal of her sentence based on the district court's refusal to make a downward departure for aberrant behavior is DISMISSED, and her conviction for perjury and the sentence imposed are AFFIRMED.

WILL, Senior District Judge, concurring.

While I join the Court's opinion, I am constrained once again to agree with the sentencing judge, in this case Judge Mihm, that the sentencing guidelines compel an egregious sentence given the facts of the defendant's conduct and its lack of impact.