4 F.3d 998
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Dorothy J. STEWARD, Defendant-Appellant.
 No. 92-2899.
 United States Court of Appeals, Seventh Circuit.
 Argued May 14, 1993.
Decided Aug. 27, 1993.
 
 Before CUDAHY, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 The United States of America ("government") charged Dorothy Jean Steward with five counts of mail fraud under 18 U.S.C. Sec. 1341. The government also charged each of her codefendants, Grace Brisco, Donald Gooch, Rita Mays, and Gloria Walker, with one count of mail fraud. Steward's codefendants pleaded guilty and agreed to testify against Steward, who had pleaded not guilty. The jury convicted Steward as charged, and the district court sentenced her. Steward appeals her conviction, which we affirm.
 
 I. Background
 A. Facts
 
 2
 Between 1987 and 1988, Steward worked as a benefit authorizer for the Social Security Administration in Chicago, Illinois. She handled the accounts of people who had already become eligible for Social Security benefits. She performed such duties as regulating the amount of benefits paid to each person and changing the addresses to which the checks were sent. If Steward, or any other benefit authorizer in her office, determined that she needed to take action on a certain account, she would prepare a one-page computer input form known as a "SSA 2795." The information contained on a SSA 2795 form was sent by computer tape to the Social Security Administration's Baltimore, Maryland, facility to be entered into its main computer. If the main computer found an error in the information contained on a SSA 2795 form, the Baltimore office would transmit to the Chicago office an "exception" report, highlighting the discovered error.
 
 
 3
 In May 1988, Helen Sibley, a benefit authorizer, who worked in the same "module" or work group as Steward, received two exception reports from Baltimore. She compared the exception reports with the original copies of the two SSA 2795 forms that were kept in the Chicago office. She noticed a few errors on the SSA 2795 forms, including the forgery of her signature. Sibley notified her module manager, Jeanette Viehman. Viehman examined the SSA 2795 forms and confirmed the irregularities.
 
 
 4
 Based on Viehman's request, Gerald Carlson, a security specialist, investigated the discrepancies in the two SSA 2795 forms. He found several Social Security accounts that contained improper payments. The payments stemmed from Steward's module or work group and were made to Steward's codefendants: Grace Brisco, Donald Gooch, Rita Mays, and Gloria Walker. Carlson and his investigators found other evidence as well. A search of Steward's module uncovered a piece of paper on Steward's desk that contained the Social Security account numbers that were written on the two SSA 2795 forms that caused the initial investigation.
 
 B. District Court Proceedings
 
 5
 1. The Government's Case.
 
 
 6
 Based on the evidence discovered through the investigation, the government charged Steward and her four codefendants, Mays, Brisco, Walker, and Gooch, with mail fraud. After pleading guilty, the codefendants testified against Steward at her trial.
 
 
 7
 (a) Rita Mays.
 
 
 8
 Rita Mays testified that Steward approached her in December 1986 and asked whether she needed additional income. Mays said she did. In January 1987, Mays received through the mail a Social Security check, payable to her, for about $2,700.00. Mays then telephoned Steward and the two agreed that Mays would keep $400.00 dollars and give the remaining money to Steward. Mays received four more Social Security checks over the next seventeen months. The first of the four checks, which was roughly $2,900.00 in amount, was split between Mays and Steward evenly. The next check, which was nearly in the same amount, was divided differently. Rather than an equal split, Steward demanded that an initial $500.00 be paid to a friend of hers, described as "Lynn," who would purportedly destroy the canceled checks at the Social Security Administration. Mays paid Steward the $500.00 for "Lynn" and then split the remaining amount evenly with Steward. Mays divided the final two checks, which were in the approximate amounts of $2,900.00 and $1,600.00, with Steward in the same three-way manner as they had done with the earlier check. After Mays had received the last check in May 1988, Steward called and instructed her not to speak with anyone who inquired about the checks. Apparently "Lynn" did not exist, because none of the spurious Social Security checks were destroyed after they had been cashed. The government introduced the five Social Security checks into evidence at trial.
 
 
 9
 (b) Grace Brisco.
 
 
 10
 Grace Brisco testified that in the Fall of 1987, while styling Steward's hair, Brisco mentioned to Steward that her niece, who had turned eighteen years old, stopped receiving her Social Security checks. Steward responded that the niece was still entitled to benefit payments. Brisco, who served as the niece's guardian, then gave Steward the Social Security number of the girl's deceased father.
 
 
 11
 In October 1987, Brisco received a fraudulent Social Security check in the mail for roughly $2,200.00. The check was made payable to Brisco. A few days later, Steward contacted Brisco by telephone, inquired whether she had received the check, and demanded one half of the $2,200.00 in the form of a "loan." Brisco consented to pay Steward just $700.00; they did not discuss the repayment of the "loan." Between November 1987 and April 1988, Brisco received through the mail four additional Social Security checks, ranging in amounts of approximately $630.00 to $2,900.00. Brisco gave Steward half the amount of each check. After Brisco received the fifth and final check in April 1988, Steward called her and warned her not to speak with anyone who inquired about the checks. At trial, the government introduced into evidence the five fraudulent Social Security checks Brisco had received through the mail.
 
 
 12
 (c) Gloria Walker.
 
 
 13
 Gloria Walker, Steward's older sister, testified that in early 1987 Steward came to her apartment and informed her that she could assist Walker in improving her poor financial situation. Steward told Walker that she would receive a one-third split of the Social Security checks. The other two-thirds would be split equally between Steward and "Lynn," the person who would supposedly destroy the canceled checks.
 
 
 14
 After her conversation with Steward, Walker received by mail a Social Security check, payable to her, in the amount of approximately $2,900.00. She cashed the check, retained one-third of the proceeds, and gave the remainder to Steward. Walker received an additional thirty fraudulent Social Security checks over the next several months. She cashed each check, kept one-third of the face amount, and gave the remaining funds to Steward for her to split evenly with "Lynn." The government introduced into evidence the thirty-one Social Security checks made payable to Walker.
 
 
 15
 (d) Donald Gooch.
 
 
 16
 Donald Gooch, a carpenter, testified that he was having financial problems. Gloria Walker, his bookkeeper, informed him that she could help him obtain additional income. Between July and December 1987, Gooch received two spurious Social Security checks in the mail. The checks were in the amounts of approximately $2,900.00 and $2,800.00.
 
 
 17
 After Gooch received the second check, Walker told him that Steward had arranged for him to get the checks and that Steward wanted $1,000.00 for her services. Gooch gave Walker the $1,000.00 for her to give to Steward. Walker then told him that Steward wanted him to remodel part of her home. Gooch thereafter met Steward for the first time. In return for the remodeling work, Steward agreed to pay Gooch with additional Social Security checks.
 
 
 18
 Between January and March 1988, Gooch worked about fifteen hours a week in Steward's house. Among other things, he installed a toilet in the upstairs bathroom, installed a kitchen countertop, and remodeled both the basement stairs and a sitting room. Soon after he began the remodeling work in January 1988, he received by mail two Social Security checks each for about $2,900.00. In April 1988, after Gooch had completed the work, he received one more check through the mail in the approximate amount of $2,000.00. In all, he received five checks, which the government introduced at trial. Gooch understood that the last three checks he received were in payment for the remodeling work he had done for Steward.
 
 
 19
 2. Steward's Case & the Government's Rebuttal.
 
 
 20
 In response to the government's evidence, Steward presented James Steward, her estranged husband, as her sole witness. Steward chose not to testify on her own behalf. James Steward testified that seven years earlier he, not Gooch, had done the remodeling work in the house. He testified that although he and Steward were separated, he visited the house on a regular basis and that the remodeling work he had done years ago had remained unchanged.
 
 
 21
 In rebuttal to James Steward's testimony, the government called Rita Mays back to the witness stand. She testified that in February 1988 she spoke with Steward about the recent remodeling taking place in Steward's home. Steward told Mays that Gooch was doing the work. Mays also testified that in March 1988 she went to Steward's home and Steward showed her the remodeling work that Gooch had recently finished. Both sides rested and the district court instructed the jury.
 
 
 22
 3. The Supplemental Jury Instruction.
 
 
 23
 After the case had gone to the jury the jury sent a written question to the court. The question stated: "We request instruction on Count # 4." The district court conferred with both counsel and sent the jury the following reply: "The instructions apply to Count 4 as they do to all the other Counts. Please read the other instructions."
 
 
 24
 Soon after they received the court's reply, the jury members sent the court an additional question: "Count Four--Question regarding the amount of check for 2,940.00 payable to Donald Gooch. Ther[e] is not a canceled che[c]k for that amount." The district court again conferred with both counsel. The government informed the court that its investigation into the matter unveiled a typographical error in count four of the indictment. Count four charged Steward with having caused to be sent through the mail a Social Security check in the amount of $2,940.00 to Gooch on January 14, 1988. The government informed the court that the amount of that check should have been listed as $2,920.00, rather than as $2,940.00. The government had introduced the actual check into evidence during the trial, and Gooch had identified it as one of the five fraudulent checks he had received. After hearing argument from both counsel on how to respond to the jury's question, the court drafted the following answer, which was sent to the jury over Steward's objection:
 
 
 25
 The indictment charges that checks for specific amounts were sent through the United States mail. Although the evidence need not establish with certainty the exact amount of any check that was allegedly sent, it must establish that the check was sent for an amount reasonably near the amount charged.
 
 
 26
 This instruction should be considered along with all the other instructions when you consider each count of the indictment and whether the government has met its burden of proving beyond a reasonable doubt all the elements of any charged offense.
 
 
 27
 After receiving the district court's response to its question regarding count four, the jury continued its deliberations and found Steward guilty as charged in each of the five counts of the indictment. The court entered a judgment of conviction. Steward, who had moved for a judgment of acquittal at the close of the evidence that the court denied, again moved for a judgment of acquittal and for a new trial. The court denied both motions. The court then sentenced Steward to twenty-seven months on each count to run concurrently. This timely appeal followed.
 
 II. Analysis
 
 28
 We have jurisdiction, 28 U.S.C. Sec. 1291, to consider the two issues Steward raises: (1) whether sufficient evidence existed to prove beyond a reasonable doubt that Steward was guilty of mail fraud, and (2) whether the district court abused its discretion in giving the jury the supplemental instruction on count four of the indictment.
 
 A. Sufficiency of the Evidence
 
 29
 In her first point on appeal, Steward contends that insufficient evidence supports her conviction for mail fraud. To succeed on her claim, Steward bears a significant burden. United States v. Gulley, 992 F.2d 108, 112 (7th Cir.1993); United States v. Kelly, 991 F.2d 1308, 1315 (7th Cir.1993). To determine whether sufficient evidence existed for a reasonable jury to have found beyond a reasonable doubt each element of mail fraud, we construe the evidence in a light most favorable to the government. United States v. Swinson, 993 F.2d 1299, 1300 (7th Cir.1993); Gulley, 992 F.2d at 112. We "will not weigh the evidence or assess the credibility of the witnesses." Kelly, 991 F.2d at 1315; accord United States v. Van Wyhe, 965 F.2d 528, 531 (7th Cir.1992). To sustain a conviction for mail fraud, the government had to prove beyond a reasonable doubt that Steward participated in a scheme to defraud and that she mailed or knowingly caused another to mail a letter or other matter for the purpose of fulfilling her scheme to defraud. 18 U.S.C. Sec. 1341; Swinson, 993 F.2d at 1300.
 
 
 30
 The focus of Steward's argument on appeal is that the witnesses who testified against her were unbelievable and that, absent their testimony, the physical evidence was inadequate to sustain her conviction. In addition to the forty-six fraudulent Social Security checks, the physical evidence the government introduced against Steward included the piece of paper found on her desk that contained the Social Security account numbers written on the two SSA 2795 forms that initially caused the investigation. The government also introduced the two SSA 2795 forms as well as some other documents involved in the fraudulent payment scheme. Thomas V. McAlexander, a handwriting examiner for the United States Secret Service, testified that he had compared Steward's handwriting exemplars with the writing contained on the various documents. Of the handwriting on the documents, he could state only that Steward "probably wrote" the hand printing and numerals on the two SSA 2795 forms. He could not make a match between her writing and any of the writing on the other documents, including the piece of paper found on her desk. In addition, the government had each document examined for fingerprints and palm prints, but none of the discovered prints belonged to Steward.
 
 
 31
 Although, as Steward strenuously argues, the weight of the physical evidence against her may not, by itself, have been enough to convict her, our role as a reviewing court is not to weigh the evidence presented at trial. E.g., Kelly, 991 F.2d at 1315. Still, even without the physical evidence, the testimonial evidence presented against Steward was overwhelming. The testimony of Steward's codefendants, during which the forty-six fraudulent checks were introduced into evidence, clearly showed that Steward orchestrated a scheme to defraud the government and caused the fraudulent Social Security checks to be sent through the mail. 18 U.S.C. Sec. 1341; Swinson, 993 F.2d at 1300. For example, Gloria Walker, Steward's sister, testified that Steward had arranged for her to receive thirty-one fraudulent Social Security checks through the mail, with Steward receiving a share of the money. And, Grace Brisco stated that she received five spurious Social Security checks that Steward arranged to be sent. Steward received a share of the money, and, after Brisco received her final check, Steward warned her not to discuss the checks with anyone who was investigating them.
 
 
 32
 We discern nothing inherently unbelievable about the testimony of the codefendants. When four witnesses line up and say they received substantial sums through this scheme and the government has numerous canceled checks to back them up, the jury was obviously free to find those witnesses credible and to believe their description of the facts. The evidence was overwhelming and we have no reason to alter the jury's findings in this case. Kelly, 991 F.2d at 1316 ("Absent 'inherently unbelievable' testimony, a jury's credibility determination will stand."); United States v. Mejia, 909 F.2d 242, 245 (7th Cir.1990) ("Credibility is for the jury, not this court, to determine."). Accordingly, sufficient evidence supports Steward's conviction for mail fraud.
 
 B. The Supplemental Jury Instruction
 
 33
 In her second point on appeal, Steward argues that the district court erred in giving the jury the supplemental instruction regarding count four of the indictment. The supplemental instruction stated in part:
 
 
 34
 The indictment charges that checks for specific amounts were sent through the United States mail. Although the evidence need not establish with certainty the exact amount of any check that was allegedly sent, it must establish that the check was sent for an amount reasonably near the amount charged.
 
 
 35
 To determine whether the district court erred in giving this supplemental instruction, we apply a deferential standard of review, reversing only if the district court abused its discretion. United States v. Sanders, 962 F.2d 660, 677 (7th Cir.) (" 'The necessity, extent, and character of any supplemental instructions to the jury are matters within the discretion of the district court.' "), cert. denied, 113 S.Ct. 262, and cert. denied, 113 S.Ct. 284 (1992). " 'Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court. If reasonable persons could differ, no abuse of discretion can be found.' " United States v. Fulford, 980 F.2d 1110, 1114 (7th Cir.1992) (quoting Harrington v. DeVito, 656 F.2d 264, 269 (7th Cir.1981), cert. denied, 455 U.S. 993 (1982)).
 
 
 36
 In deciding whether the district court acted within its sound discretion, we examine (1) whether the district court specifically answered the jury's question, (2) whether the court's instruction was a correct legal statement, and (3) whether the court's instruction, as a whole, fairly and adequately treated the issues involved in the case. Sanders, 962 F.2d at 677. From our consideration of these factors, we conclude that the district court did not abuse its discretion in providing the jury with the supplemental instruction.
 
 
 37
 First, the district court answered the jury's query with concrete accuracy; the answer went straight to the jury's concern regarding the legal significance of the discrepancy between the check amount noted in the indictment and the proof of that amount at trial. United States v. Zabic, 745 F.2d 464, 475 (7th Cir.1984) (stating that a district court must respond to a jury's questions with concrete accuracy to clarify the jury's concern).
 
 
 38
 Second, the district court provided the jury with an accurate statement of law. The amount of the check was not an element that the government needed to prove, just that Steward had caused the fraudulent check to be sent through the mail as part of her scheme to defraud the government. 18 U.S.C. Sec. 1341; Swinson, 993 F.2d at 1300. As the government pointed out to the district court, the amount of $2,940.00 stated in count four was a typographical error. The amount should have been listed as $2,920.00, the amount represented on the check introduced during the trial. Donald Gooch also identified the check as one of the five spurious checks he had received. Thus, the $20.00 variance between the amount in count four and the proof at trial was not fatal to the government's case against Steward. See Fed.R.Crim.P. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); see also United States v. Leichtnam, 948 F.2d 370, 376-77 (7th Cir.1991); United States v. Field, 875 F.2d 130, 133-34 (7th Cir.1989). In addition, we perceive no prejudice Steward suffered from the typographical error in the indictment. Id. at 133 (stating that "an indictment is insufficient if it does not '[show] with accuracy to what extent [the defendant] may plead a former, acquittal or conviction,' or if it does not protect the defendant against another prosecution for the same offense") (citations omitted).
 
 
 39
 Third, the district court's supplemental instruction, as a whole, fairly and adequately treated the issues. Despite Steward's contrary protestations, the supplemental instruction did not tell the jury either that it could ignore the evidence presented at trial or that the government had presented sufficient proof to find Steward guilty beyond a reasonable doubt. Steward's argument easily fails from a perusal of the language the district court chose to use in the supplemental instruction. The court specifically answered the jury's query and told it to consider the supplemental instruction along with the other instructions it had given the jury. Steward has not challenged the other instructions on appeal. Sanders, 962 F.2d at 677-78 (stating that the district court's admonishment to the jury to "reread all instructions" limits any possible prejudice from a supplemental instruction). The supplemental instruction also informed the jury that it had to find Steward guilty beyond a reasonable doubt, not, as Steward seems to want us to read, that the jury did not need to consider the evidence because Steward's guilt was a foregone conclusion based on the evidence the government had already presented.
 
 
 40
 We see nothing in the supplemental instruction, either explicit or implicit, that would lead any reasonable person to interpret the terms of that instruction in the manner in which Steward advances. The $20.00 difference between the proof at trial and the indictment was not so significant a variance that the district court's supplemental instruction could not resolve it. Accordingly, we conclude that the district court did not abuse its discretion in providing the jury with the supplemental instruction. Id. at 677. Its response to the jury's question was reasonable.
 
 III. Conclusion
 
 41
 Sufficient evidence exists in the record to support Steward's conviction for mail fraud. Also, the district court did not abuse its discretion in giving the jury a supplemental instruction on count four of the indictment. Therefore, the district court is
 
 
 42
 AFFIRMED.