106 F.3d 404
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jackie W. BALENTINE, Defendant-Appellant.
 No. 96-2183.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 14, 1996.
Decided Jan. 2, 1997.
 
 Before COFFEY, EASTERBROOK and MANION, Circuit Judges.
 
 ORDER
 
 1
 On May 25, 1995, defendant Jackie W. Balentine pleaded guilty to armed robbery of a financial institution in violation of 18 U.S.C. § 2113(a) pursuant to a plea agreement. On April 30, 1996, the district court sentenced Balentine to 70 months imprisonment based on his criminal history category of V and the offense level of 21.[1] At the sentencing hearing Balentine argued that criminal history category V significantly over-represented his prior criminal record and requested that the district court consider a downward departure pursuant to U.S.S.G. § 4A1.3 (" § 4A1.3") on that basis. The district court denied Balentine's request for a downward departure. Balentine appeals.
 
 FACTS
 
 2
 On April 6, 1995, after a prolonged bout of alcohol and Valium use, Balentine robbed Society Bank of South Bend, Indiana. He stole $2,240 after displaying a "BB gun" to a teller and demanding money. No one was injured. Balentine initially fled Indiana, but on April 14, 1995, surrendered to the South Bend Police Department. Soon after, Balentine entered into a plea agreement with the United States Attorney.[2]
 
 
 3
 After Balentine pleaded guilty to bank robbery, the Probation Department prepared a Presentence Investigation Report ("PSI"). The PSI reported the following offenses in calculating Balentine's criminal history category:
 
 
 4
 10/5/89 Driving While Intoxicated in 2 days jail and $500 fine 1
 
 Florence, AL
 
 5
 5/25/90 Driving While Intoxicated in 160 days jail, 100 days 2
 
 
 6
 Huntsville, AL suspended; 2 years
 
 
 7
 probation; $1,000 fine
 
 
 8
 11/2/92 3rd Degree Burglary in 2 years state custody 3
 
 Florence, AL
 
 9
 10/29/93 Driving While Intoxicated in 1 year jail, suspended; $1,000 1
 
 
 10
 Florence, AL fine.
 
 
 11
 In addition to these 7 criminal history points, the Probation Department added two points because the instant offense was committed while Balentine was under an active probation violation warrant based on his 1990 DWI, and added another point because the instant offense was committed within two years of Balentine's release from custody for the 1992 burglary for a total of 10 criminal history points.[3] These ten points placed Balentine in criminal history category V.
 
 
 12
 Neither party objected to the PSI. However, at the sentencing hearing, Balentine requested a downward departure pursuant to § 4A1.3. Balentine argued that criminal history category V over-represented his criminality because four of the ten points were for "nonviolent driving under the influence type crimes." He also argued that he "is not the type of criminal that you would normally think of being in Criminal History V [sic]." However, he did not support this bald statement in any way. Balentine asked the district court to ignore the points assessed for his drunk driving convictions, and only impose six criminal history points. This would have resulted in a criminal history category of III and a sentencing range of 46 months to 57 months.
 
 
 13
 The district court refused to adjust Balentine's criminal history category. At the sentencing hearing, Judge Sharp stated:
 
 
 14
 [I]t is my obligation to follow the readings of the Court of Appeals with regard to the guidelines because it is the law, and it is the law that is binding on me, and I'm not very comfortable with it in this case, but I don't think I have much leeway, I think I have done all I can do consistent with the position the government has taken and consistent with the language and the interpretation of the guidelines, including criminal history category.
 
 
 15
 _
 
 
 16
 ............................................................
 
 
 17
 ....................
 
 
 18
 * * *
 
 
 19
 I will say candidly--and this doesn't help this defendant a bit--were I in the old system I think I could find a better way to do justice in this case.... This is a bank robbery case. And if you look at the old sentencings, they were generally pretty heavy across the board, and certainly by this court and by the Judge.
 
 
 20
 * * *
 
 
 21
 [Balentine's attorney] makes a very appealing argument in terms of the way the system works out with regard to this particular defendant, and the only answer that I have--it is perhaps not a good one, but it is one that I have to give--and that is that I have to follow the law, at least as it is interpreted in this circuit and by the Supreme Court....
 
 
 22
 * * *
 
 
 23
 So, I took an oath to follow the Constitution and to follow the laws, and I shall have to fulfill that oath. It is not a pleasant task in this case.
 
 
 24
 There are a number of things that hold both ways. It is a bank robbery case and it is a defendant who has a severe alcohol problem which in and of itself, as I said a minute ago, is not criminal. I honestly do not believe ... that I can go with you on Category V of the criminal history because I sincerely believe that if I adopted your view and it were challenged I think the Court of Appeals would reverse it.
 
 
 25
 (Hr'g Tr. at 10-12.) In the Sentencing Memorandum, Judge Sharp stated: "The defendant has ten criminal history points, so his criminal history category is V. This court feels that category V accurately represents the defendant's criminal history and thus his motion for a downward departure in criminal history category is denied."
 
 
 26
 On appeal, Balentine argues that Judge Sharp's statement quoted above indicates a refusal to consider departing downward based on his belief that he lacked the authority to do so. The government argues that Judge Sharp was fully aware of his authority to depart under § 4A1.3 and that he exercised his discretion not to depart.
 
 DISCUSSION
 
 27
 A district court's decision on whether or not to grant a departure pursuant to § 4A1.3 is strictly a discretionary decision. It is well settled that this court lacks jurisdiction to review a district court's discretionary decision to deny a downward departure from the Guidelines. United States v. Bradford, 78 F.3d 1216, 1223 (7th Cir.), cert. denied, 116 S.Ct. 1581 (1996); United States v. Jones, 55 F.3d 289, 292 (7th Cir.), cert. denied, 116 S.Ct. 161 (1995); United States v. Gulley, 992 F.2d 108, 111 (7th Cir.1993). However, it is equally well established that we have jurisdiction to review a refusal to depart when that refusal is based on the district court's erroneous legal conclusion that it lacks authority to depart. United States v. Cureton, 89 F.3d 469, 474 (7th Cir.1996); United States v. Abbott, 30 F.3d 71, 72-73 (7th Cir.1994); United States v. Poff, 926 F.2d 588, 591 (7th Cir.), cert. denied, 502 U.S. 827 (1991).
 
 
 28
 Balentine attempts to bring himself within the latter rule by quoting some of the above language and summarily concluding that it shows Judge Sharp thought he lacked authority to grant a downward departure. However, this is far from clear. First, most of the language Balentine points to merely indicates Judge Sharp's discomfort and disagreement with sentencing Balentine under the applicable guidelines.[4] However, a sentencing court may not depart based on its personal disagreement with the Guidelines. See United State v. Seacott, 15 F.3d 1380, 1389 (7th Cir.1994) ("Departures must 'be based on policies found in the guidelines themselves rather than in the personal penal philosophy of the sentencing judge.' ") (quoting United States v. Newman, 965 F.2d 206, 213 (7th Cir.), cert. denied, 506 U.S. 976 (1992)); United States v. Scott, 914 F.2d 959, 963 (7th Cir.1990). Likewise, a court may not depart from the Guidelines simply because it believes the sentence is too harsh. See Jones, 55 F.2d at 293.
 
 
 29
 The record demonstrates that Judge Sharp was aware of § 4A1.3. Section 4A1.3 clearly provides that a sentencing court may consider a downward departure when it finds that a technically correct criminal history category "significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S.S.G. § 4A1.3. Not only did Judge Sharp consider this section when sentencing--indicating he was aware of his authority to depart--but he also made an explicit finding on the record that "[criminal history] category V accurately represents [Balentine's] criminal history." Thus, the record supports a conclusion that Judge Sharp was aware of his authority and exercised his discretion to deny the requested downward departure.
 
 
 30
 Balentine asserts that Judge Sharp's fear of being overturned by this court indicates his belief that he lacked authority to depart. The language Balentine cites is: "I honestly do not believe ... that I can go with you on the Category V of the criminal history because I sincerely believe that if I adopted your view and it were challenged I think the Court of Appeals would reverse it." (Emphasis by Balentine.)
 
 
 31
 But we have previously interpreted virtually identical language as demonstrating a court's exercise of discretion. See Gulley, 992 F.2d at 111. In Gulley, the sentencing court stated "I do not believe that that is a justification that would be accepted by the Seventh Circuit.... I also believe that with certainty any more lenient sentence[ ] would result in a reversal." Id. (emphasis deleted.) We interpreted these statements as a finding by the sentencing court "that, in light of Seventh Circuit precedent, the facts ... did not justify granting a downward adjustment." Id. This clearly constitutes an exercise of discretion. See id. ("We believe this language demonstrates that [the sentencing judge] exercised his discretion in refusing to depart."). Thus, Judge Sharp's belief that a contrary outcome would result in reversal demonstrates that he was exercising his discretion in refusing to depart based on his reading of the law and the facts.
 
 
 32
 Although Judge Sharp may have had some sympathy for Balentine, it is clear that he was aware of his authority to depart pursuant to § 4A1.3 and that he exercised his discretion in refusing to do so. Thus, we lack jurisdiction over this appeal and it is DISMISSED.
 
 
 
 [1]
 The sentencing range for an individual with an offense level of 21 and a criminal history category of V is 70 months to 87 months
 
 
 [2]
 The record does not include a copy of the plea agreement. However, during the change of plea hearing, the court went through the entire agreement with Balentine. The terms generally provided that Balentine would plead guilty and cooperate with the government in prosecuting his co-defendant and the government would recommend a reduction for acceptance of responsibility and substantial assistance and would recommend that Balentine be sentenced at the lower end of his sentencing range. Both parties complied with these terms
 
 
 [3]
 In addition to the offenses for which Balentine was assessed criminal history points, the PSI indicates Balentine was referred for two shoplifting offenses while a juvenile (8/28/67 and 10/28/67). Further, he was convicted of grand larceny and receiving stolen goods (5/12/70), of 2nd degree burglary, grand larceny and receiving stolen goods (10/28/70), and of three instances of driving with a revoked license. The PSI also indicates that Balentine has several pending charges: driving while intoxicated and reckless driving in Nassau County, FL (1/25/86); driving under the influence in Priceville, AL (5/30/90); criminal conversion in St. Joseph County, IN (10/6/90); driving while intoxicated and resisting law enforcement in St. Joseph County, IN (4/21/92). In each of these cases Balentine failed to appear, warrants were issued and remain active. Balentine also has two other active warrants outstanding; one for failure to pay the fine imposed for his 10/29/93 DWI and one for violating the terms of his probation imposed for his 5/25/90 DWI
 
 
 [4]
 For instance, Balentine quotes the following: "it is the law that is binding on me, and I'm not very comfortable with it in this case, but I don't have much leeway" and "I will say this candidly--and this doesn't help this defendant a bit--were I in the old system I think I could find a better way of doing justice" and "the only answer that I have--it is perhaps not a good one, but it is the only one I have to give--and that is that I have to follow the law."